IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br>QUALITY WOODWORK INTERIORS,<br>INC., *et al*<br>    Debtor(s) | § § § § § § | CASE NO: 05-35214<br><br>CHAPTER 7 |
| W. STEVE SMITH, TRUSTEE<br>    Plaintiff(s)<br><br>VS.<br><br>KKM PARTNERSHIP<br>    Defendant(s) | § § § § § § § § | ADVERSARY NO. 06-3032 |
| W. STEVE SMITH, TRUSTEE<br>    Plaintiff(s)<br><br>VS.<br><br>NICKOS KAY KAPETANAKIS<br>    Defendant(s) | § § § § § § § | ADVERSARY NO. 06-3033 |

### MEMORANDUM OPINION

These two adversary proceedings concern whether pre-petition transfers made to certain insiders are avoidable preferential transfers under 11 U.S.C. § 547. Adversary No. 06-3032 seeks to avoid a $101,000 transfer made by Quality Woodwork Interiors, Inc. to KKM Partnership on September 14, 2004. Adversary No. 06-3033 seeks to avoid a $20,000 transfer made by Quality Woodwork Interiors, Inc. to Nickos Kay Kapetanakis on February 3, 2005.

### Jurisdiction and Venue

These adversary proceeding fall within the Court's subject mater jurisdiction granted in 28 U.S.C. § 1334(b). The proceedings are core matters under 28 U.S.C. § 157(b)(2)(F). Venue is proper under 28 U.S.C. § 1409(a).

1

## Background

Quality Woodwork Interiors, Inc. and its affiliate Quantum Designworks, L.C. each filed chapter 11 bankruptcy petitions on April 6, 2005. On that date, the Court ordered that the cases be jointly administered. On April 20, 2005, the two cases were converted to cases under chapter 7 of the Bankruptcy Code. W. Steve Smith was appointed as the chapter 7 trustee.

Quality Woodwork Interiors, Inc. was 100% owned by Leonidas Kapetanakis, who also served as Quality Woodwork Interiors, Inc's president. Nickos Kay Kapetanakis is the father of Leonidas Kapetanakis. KKM Partnership is owned by insiders of Quality Woodwork Interiors, Inc.

## Applicable Law

Effective October 17, 2005, changes were made to the Bankruptcy Code with respect to the recovery of alleged preferential transfers. Pub. L. No. 109-8, 119 Stat. 23 (*See* § 409 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). However, the changes in preference law that became effective on October 17, 2005, were only effective with respect to bankruptcy cases that were filed after that date. *Id.* (*See* § 1501(b)(1) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). These adversary proceedings were filed after October 17, 2005. However, Quality Woodwork Interiors, Inc.'s bankruptcy petition was filed prior to October 17, 2005. Because these two adversary proceedings relate to cases commenced prior to October 17, 2005, the Court will apply the Bankruptcy Code as it existed on April 6, 2005. All statutory references are to the Bankruptcy Code as in effect on that date.

Section 547 of the Bankruptcy Code authorizes the trustee to avoid certain preferential transfers. Subject to statutory affirmative defenses, "the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b).

In this case, the $20,000 transfer was made within the 90-day period set forth in § 547(b)(4)(A) and the $101,000 transfer was made within the one year period set forth in § 547(b)(4)(B). The one year period only applies if the transfer was made to an insider. The parties do not dispute that KKM Partnership is an insider for the purposes of § 101(31).[1]

Nevertheless, the timing of the transfers makes a significant difference with respect to the trustee's burden of proof. As set forth above, a transfer is only avoidable if made when the debtor was insolvent. 11 U.S.C. §547(b)(3). Section 547(f) provides that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Section 547(g) places the burden of proof on the trustee to prove insolvency outside of the 90-day period. 11 U.S.C. § 547(g).

---

[1] Although KKM Partnership does not fit within the explicitly defined categories of insiders set forth in § 101(31), the defined categories are illustrative rather than exhaustive. *In re Krehl*, 86 F 3d 767, 741-42 (7th Cir 1996). Moreover, the evidence is abundantly clear that KKM Partnership is an insider It has common ownership with the transferee debtor, it was operated solely for the benefit of the Kapetanakis family, and its transactions with the debtor were not at arm's length. It is an insider *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992).

The effect of these two sections is to require the trustee to prove insolvency with respect to transfers made between 91-days and one year prior to the petition date (*In re Buffalo Auto Glass*, 187 B.R. 451, 453 (Bankr. W.D.N.Y. 1995) and to require the defendant to prove solvency with respect to transfers made during the 90-days preceding the petition date. *In re Ramba*, 416 F.3d 394, 403 (5th Cir. 2005). With respect to solvency during the first 90-day period, the defendant "must introduce some evidence to show that the debtor was solvent at the time of the transfer; mere speculative evidence of solvency is not enough." *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998).

The statute sets forth a number of possible affirmative defenses in § 547(c). The burden of proof with respect to these defenses is on the defendant. 11 U.S.C. § 547(g); *In re Prescott*, 805 F.2d 719, 727 (7th Cir. 1986). Although KKM Partnership's amended answer asserted affirmative defenses, they were actually in the nature of an assertion that the trustee could not meet his burden to prove that the transfer was to an insider. KKM Partnership alleged that the true party-in-interest of the transfer was Cletus Dodd. Dodd was not a defendant. None of the traditional defenses under § 547(c) were asserted. With respect to Nickos Kay Kapetanakis, no affirmative defenses were alleged. With respect to the "Dodd" defense, the Court places the burden of proof on the trustee. Proof that the defendant received the transfer is an essential element of the trustee's case, for which he has the burden under § 547(g).

The test for insolvency is well known. Insolvency is a "financial condition such that the sum of [the] entity's debts is greater than all of [its] property, at a fair valuation...." *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998), citing 11 U.S.C.A. § 101(32)(1993).

### The $20,000 Transfer

On February 3, 2005, Quality Woodwork Interiors, Inc. paid $20,000 to Nickos Kay Kapetanakis. See Trustee Ex. 4. This transfer satisfies the requirement of § 547(b)(1).

The $20,000 was in repayment of a loan made by the defendant to Quality Woodwork Interiors, Inc. See Trustee Ex. 15 and 20. This satisfies the requirement of § 547(b)(2).

There was a substantial dispute at the trial as to whether the debtor was insolvent at the time of the February 3, 2005 transfer. As set forth above, the defendant bears the burden of proof with respect to insolvency during the 90-day period. Although there was some evidence introduced by the defendants with respect to the prospects of reversing the debtor's deteriorating financial condition, the evidence fell far short of sustaining the burden of proof. By February 3, 2005, the debtor was involved in a series of lawsuits in which the debtors were attempting to collect on disputed receivables. By that date, the debtors were unable to continue to pay their own attorneys on a regular basis. This had substantially slowed the litigation. There was no real prospect of a sufficient cash infusion to salvage the litigation. See Trustee Ex. 8. The debtor's secured creditors were owed substantially more than the fair market value of their collateral. See Ex. 5. The debtor had substantial unpaid unsecured debts, including debts to insiders of nearly $1,000,000. Payables exceeded $3,000,000 and some payables were 4-6 months past due. By the date of the bankruptcy, the debtor's schedules and statements reflected a fair market value insolvency (i.e., a deficit) of over $2,800,000. See Trustee Ex. 5. At December 31, 2004, the debtor's internal balance sheet reflected a deficit of $1,700,000. See Trustee Ex. 11. By January 31, 2005, the deficit was recorded at $3,164,000. Trustee Ex. 15. The December 2004 financial statement reflected a net loss of over $2,000,000. Id. Total remaining assets in the company were less than $6,000,000. Id. Accordingly, the $2,000,000 loss was extraordinarily significant.

Indeed, the only real arguments favoring solvency were that: (i) the debtor had written down its receivables too aggressively given the good prospects of the litigation; and (ii) the debtor had substantial goodwill not reflected on its balance sheet. Although the Court does not totally discount these two arguments, they were not sufficiently proven to overcome the overwhelming evidence of insolvency reflected in the balance of the documents and testimony. The burden of proof was on the defendants and they did not meet that burden. The debtor was insolvent at the time of the transfer. The requirement of § 547(b)(3) is satisfied.

The transfer was made 62-days prior to the petition date. The requirement of § 547(b)(4)(A) is satisfied.

The test established under § 547(b)(5) is whether the transfer enabled the creditor to receive more than the creditor would have received in a chapter 7 bankruptcy case. The schedules in this case reflect that there will be less than a 100% distribution. *See* Trustee Ex. 5. The defendant was an unsecured creditor. When an unsecured creditor receives a payment in a case in which the distribution will be less than 100%, the creditor has received "a greater percentage of his debt" than he would in a hypothetical chapter 7 case. *Palmer Clay Prods. v. Brown*, 297 U.S. 227 (1936). The requirement of § 547(b)(5) is satisfied.

Although no affirmative defenses were pled with respect to the $20,000 payment, there was some evidence at trial with respect to the "ordinary course of business" defense as set forth in § 547(c)(2).[2] This evidence was most probative of the credibility of the witnesses on various

---

[2] Section 547(c)(2) provides that the trustee may not avoid a transfer:
    (1) to the extent that such transfer was
        (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
        (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
        (C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2) (2004).

issues. Nevertheless, for completeness, the Court notes that the business arrangement with respect to the $20,000 loan fails to satisfy the potential defense. The $20,000 loan was not done in the defendant's ordinary course of business; therefore, defendant cannot satisfy § 547(c)(2)(A). There is no evidence that the defendant was in the business of lending money as required to satisfy § 547(c)(2)(B). And, finally, the loan was interest-free. Accordingly, it was not on "ordinary business terms" as required by § 547(c)(2)(C). The defendant failed to meet his burden of proof of the affirmative defense, even if it was preserved for trial.

Judgment will be issued for the plaintiff and against Nickos Kay Kapetanakis for $20,000 plus pre-judgment interest from February 6, 2005 and costs.

### The $101,000 Transfer

The $101,000 transfer was made on September 14, 2004, to KKM Partnership. This was 142 days before the petition date. Accordingly, for the reasons set forth above, the burden of proof on insolvency under § 547(b)(3) rests on the trustee.

The trustee failed to meet his burden of proof on insolvency. There was substantially no evidence introduced at trial as to the debtor's financial status on September 14, 2004. To be sure, the debtor's financial troubles on that date were extremely serious. It was already embroiled in litigation and its income had precipitously declined. However, the lawsuits had not yet deteriorated beyond the point of being salvageable. The debtor still had limited bonding capability. In September 2004, the debtor had a $10,000,000 backlog of work, including bonded work. Through November 2004, the debtor's principal secured lender (Amegy Bank) had renewed its loans with the debtor. In January 2005, the debtor was working on a $3,500,000 project on a courthouse in Galveston, Texas. The debtor believed that it had a valid bond and had already invested $500,000 in the work. The bond was denied in January 2005, requiring the

debtor to cease work on the project. Although the debtor had missed interest payments on its debts starting in July 2004, the bank did not call its debt prior to February 2005. This accumulation of evidence is insufficient to establish whether the debtor was insolvent on September 14, 2004.

The trustee intended to prove the debtor's insolvency through the testimony of his expert witness, Jim Smith. At trial, the Court sustained the defendants' objections to Jim Smith's testimony and to the admission of his expert report based on the trustee's failure to comply with written discovery requests. Jim Smith's testimony was that he had reviewed a substantial amount of material in preparation of his expert report and testimony for trial. The materials, however, had not been provided to the defendants as requested during discovery. The Court, therefore, did not allow Jim Smith to testify as an expert.

At the conclusion of the trial, the trustee advised the Court that it was possible that the materials had indeed been provided to the defendants. The trustee filed a subsequent motion requesting the Court reopen the evidence on the basis that the trustee could show that some of the materials had been presented to the defendants. The Court finds that the motion does not overcome Jim Smith's unambiguous testimony that much material was not provided when requested in discovery.

The Court has discretion as to whether to exclude expert testimony when a party has failed to comply with discovery requests. *Scott v. Univ. of Miss.*, 148 F.3d 493, 513 (5th Cir. 1998). These adversary proceedings are over relatively small sums. Given the small sums, there have been an inordinate amount of hearings and hostility in this case. There have been substantial discovery disputes. On March 9, 2006, the Court ordered all Rule 7026 disclosures to be timely made. The parties did not comply. On October 11, 2006, this Court specifically

ordered compliance with all outstanding discovery requests and issued sanctions based on the parties' previous failure to comply with an earlier Court order. The Court again explicitly ordered compliance with Rule 7026's expert witness disclosure requirements. It would not be reasonable to allow the trustee to avoid his pre-trial discovery obligations (already previously breached) and then to reopen the evidence to allow him to avoid compliance with his once-breached obligations. Accordingly, the motion to reopen is denied and the Court affirms its trial ruling to exclude the expert testimony by Jim Smith.

The other elements of § 547(b) are easily satisfied. The only issue that was truly disputed was whether KKM Partnership—or Cletus Dodd—was the true recipient of the transfer. KKM Partnership alleges that it was only a conduit between Cletus Dodd and the debtor. According to KKM Partnership, Dodd lent the money to the debtor and KKM Partnership merely facilitated the transaction. However, the unambiguous evidence disproves this contention. The debtor had frequently borrowed money from Dodd. On this occasion, Dodd refused to take further risk by making a loan to the debtor. In order to obtain the $100,000 loan from Dodd, KKM Partnership agreed to be the borrower from Dodd. KKM Partnership then lent the money to the debtor. Dodd did not take the risk of the debtor's insolvency or other non-payment; KKM Partnership took that risk. The mere fact that Dodd knew that KKM Partnership would re-lend the money to the debtor does not make KKM Partnership a conduit. Dodd lent money on KKM Partnership's credit, not on the debtor's credit.[3] The trustee meets his burden of proof with respect to § 547(b)(1) and § 547(b)(2). The $101,000 was paid to KKM Partnership. KKM Partnership was a creditor. The $101,000 was paid on account of an antecedent debt to KKM Partnership.

---

[3] The trustee wishes for the Court to consider portions of Dodd's deposition that were offered late in the trial. The defendants oppose consideration of those additional portions. In reaching the conclusion set forth above, the Court has not considered the objectionable portions of Dodd's deposition. Accordingly, the motion with respect to consideration of the additional portions of the deposition is denied as moot.

With respect to § 547(b)(4), the transfer was to an insider and was made within one year of the petition date.

With respect to § 547(b)(5), and for the reasons set forth above regarding the $20,000 loan, the transfer enabled KKM Partnership to receive more than it would have received in a chapter 7 case if the transfer had not been made.

Nevertheless, because the trustee failed on his burden with respect to insolvency, judgment on the $101,000 transfer is for the defendant.

## Conclusion

The trustee is entitled to judgment against Nickos Kay Kapetanakis for the $20,000 transfer. KKM Partnership is entitled to judgment with respect to the $101,000 transfer. A separate judgment will be issued.

Signed at Houston, Texas, on June 4, 2007.

MARVIN ISGUR
United States Bankruptcy Judge